UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-23205-CIV-MORENO

BRIGITTE ESPINOZA UGAZ,

      Plaintiff,

vs.

AMERICAN AIRLINES, INC., and
MIAMI-DADE COUNTY d/b/a
MIAMI INTERNATIONAL AIRPORT

      Defendants.
      _____/

**DEFENDANT AMERICAN AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT**

      Defendant, American Airlines, Inc., by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 hereby files its Motion for Summary Judgment and Memorandum of Law in support and state as follows:

**I.    INTRODUCTION**

      Plaintiff filed a two-count complaint in which she alleges Defendants, American Airlines, Inc. ("American Airlines") and Miami-Dade County d/b/a Miami International Airport ("the County") are liable for injuries sustained by the Plaintiff while traversing an inoperable escalator. *See* Second Amended Complaint at Docket No. 16. Specifically, the Plaintiff claims that American Airlines, Inc. (1) failed to provide an operable escalator, thereby making the escalator an unsafe and/or hazardous means of egress to the terminal, causing Plaintiff to fall; (2) failed to provide adequate lighting at or near the subject area rendering the premises dangerous and unsafe for Plaintiff; and (3) required the Plaintiff to walk on an inoperable escalator as a means of egress to the terminal rendering the escalator dangerous and unsafe. *Id.* Plaintiff's Amended

Complaint further alleges American had a duty to maintain the subject escalator; was negligent in creating a dangerous and hazardous condition, failed to provide a reasonable mode of operation or failed to properly train and supervise its employees on issues related to safeguarding the premises and failed to maintain the premises in a safe condition. *Id.*

Defendant, American Airlines, Inc. moves for summary judgment under the Montreal Convention as the Plaintiff's alleged injuries were not caused by an "accident" as that term is defined by law. Alternatively, Defendant, American Airlines, Inc. moves for summary judgment on the grounds that Plaintiff does not have the necessary evidence to support her claim that American Airlines, Inc. breached a duty of care to the Plaintiff, causing her damages. Finally, to the extent that any of Plaintiff's claims survive, her provable damages are limited to 100,000 Special Drawing Rights under the Montreal Convention. For all of these reasons, Defendant, American Airlines, Inc. is entitled to Summary Judgment on all counts as a matter of law.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits demonstrate there is no "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate only when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when the evidence is viewed most favorable to the non-moving party. *See Sweat v. Miller Brewing Company*, 708 F. 2d 655 (11th Cir. 1983). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no genuine issue of material fact is found to exist, summary judgment is proper because it

CASE NO. 07-23205-CIV-MORENO

avoids needless and costly litigation and promotes judicial efficiency. *Trustees of the Plumbers Local No. 519 Health and Welfare Trust Fund v. Garcia*, 677 F. Supp. 1554, 1556 (S.D. Fla. 1988).

    A.    **Applicable Law**

Claims arising under the Montreal Convention are governed by Federal law. As a treaty of the United States, the Montreal Convention is the supreme law of the land. U.S. Const. art. VI, cl. 2. *See Husain v. Olympic Airways,* 540 U.S. 644 (2004); *El Al Israel Airlines, Ltd. v. Tseng,* 525 U.S. 155, 160 (1999); *Zicherman v. Korean Air Lines Co., Ltd.,* 516 U.S. 217, 226 (1996). It is well-settled that treaty interpretation is a matter of federal law. *See Hitachi Data Systems Corp. v. Nippon Cargo Airlines Co., Ltd.*, 1995 WL 16923 (N.D. Cal. 1995) (the scope of the Warsaw convention is a matter of federal law and federal treaty interpretation ) (citing *Maugnie v. Compagnie Nationale Air France,* 549 F.2d 1256 (9th Cir. 1977), cert denied, 431 U.S. 974 (1977)); *Potter v. Delta Air Lines, Inc.*, 98 F.3d 881 (5th Cir. 1996); *Beaudet v. British Airways, PLC*, 853 F. Supp. 1062 (N.D. Ill. 1994)(treaty interpretation is a matter of federal law). Alternatively, negligence not arising under the Montreal Convention is a substantive issue, necessitating the application of Florida law.

III.    **LEGAL ANALYSIS**

    A.    **Plaintiff's Claims Are Barred By The Montreal Convention. Alternatively, Plaintiff's Claims Are Limited to 100,000 Special Drawing Rights Under The Montreal Convention.**

        1.    <u>As This Court Previously Held, The Montreal Convention Provides The Exclusive Remedy For Plaintiff's Claims In This Matter.</u>

This Court has previously held that Plaintiff's claims against American Airlines, Inc. arise under the Montreal Convention. Docket No. 19. The Court based that determination on the fact that on November 4, 2003, the Montreal Convention (formally known as the Convention for

3

CASE NO. 07-23205-CIV-MORENO

the Unification of Certain Rules for International Carriage by Air Done at Montreal, opened for signature May 28, 1999, S. Treaty Doc. No. 106-45, at 27 (2000), 2242 U.N.T.S. 350) entered into force in the United States, superseding the Warsaw Convention. *Baah v. Virgin Atlantic Airways Limited*, 473 F. Supp. 2d 591 (S.D.N.Y. 2007); citing *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 & n.4 (2d Cir. 2004). Article I of the Montreal Convention defines the scope of the Convention and to whom the Convention applies:

> (2) For the purposes of this Convention, the expression international carriage means any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transshipment, are situated either within the territories of two States Parties, or within the territory of another State, even if that State is not a State Party. Carriage between two points within the territory of a single State Party without an agreed stopping place within the territory of another State is not international carriage for the purposes of this Convention.

Paragraph one of Article 17 of the Montreal Convention provides:

> 1. The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft in the course of any of the operations of embarking or disembarking.

Article 21 provides in pertinent part:

> 1. For damages arising under paragraph 1 of Article 17 not exceeding 100,000 Special Drawing Rights for each passenger, the carrier shall not be able to exclude or limit its liability.
>
> 2. The carrier shall not be liable for damages arising under paragraph 1 of Article 17 to the extent that they exceed for each passenger 100,000 Special Drawing Rights of the carrier proves that:
> (a) such damage was not due to the negligence or other wrongful act or omission of the carrier or its servants or agents; or
> (b) such damage was solely due to the negligence or other wrongful act or omission of a third party.

Here, Plaintiff's claims are exclusively governed by the Montreal Convention, as she sustained bodily injury while in the course of disembarking from an international flight. In the

4

context of determining an air carrier's liability under Article 17 of the Montreal Convention, there are three factors to consider in determining whether a passenger is in the course of embarking or disembarking: (1) the passenger's activity at the time of the accident causing the injury; (2) the passenger's location at the time of the injury; and (3) whether the passenger was under the carrier's control at the time of the injury. *See Marotte v. American Airlines, Inc.,* 296 F.3d 1255, 1260 (11th Cir. 2002); *Day v. Trans World Airlines, Inc*., 528 F.2d 31, 33 (2d Cir. 1975); *Moses v. Air Afrique*, 2000 U.S. Dist. LEXIS 2855 (E.D.N.Y. Mar. 21, 2000).

The Eastern District of New York found a plaintiff who fell off a bus transporting passengers from the plane to the terminal was injured in the course of disembarking. *See Ricotta v. Iberia Lineas Aereas de España*, 482 F. Supp. 497 (E.D.N.Y. 1979). There, the Court noted that the plaintiff had just exited the aircraft, was in an area of the airport restricted to arriving passengers and airline personnel, had not yet entered a safe common part of the terminal, and was acting under the control of airline personnel. *See also Alleyn v. Port Authority of New York & New Jersey*, 58 F. Supp. 2d 15, 21 (E.D.N.Y. 1999) (finding that an accident occurred in the process of disembarking where a passenger was being led along a restricted corridor and not "free to roam the public areas of the terminal"). Additionally, in *Lyons v. American Trans Air, Inc.*, the plaintiff was held to be in the process of disembarking where she had just deplaned, was being escorted to customs, was not free to move about the terminal, and was not in a common public area. *Lyons v. American Trans Air, Inc.*, 231 A.D.2d 689, 690 (N.Y. App. Div. 1996).

In this case, Plaintiff had just exited the jet bridge leading from the airplane when she noticed the subject escalator was not moving. *See* Statement of Undisputed Material Facts. She had yet to enter any common area of the airport when the incident occurred, as she was first required to pass through immigrations and customs. *Id.* Like the plaintiffs in the

5

aforementioned cases, Plaintiff in this matter was not "free to roam the public areas of the terminal." *Id.* She was required, along with all international passengers to go straight to customs prior to entering any public area of the terminal. *Id.* In fact, she had not even retrieved her checked baggage at the time of the incident. *Id.*

The Southern District of New York, also applying the three-part test, found a plaintiff to have been in the process of disembarking where he was engaged in activity required of him in order to arrive safely at the common area of John F. Kennedy Airport. *Gabra v. Egyptair*, 2000 U.S. Dist. LEXIS 14395, at *7 (S.D.N.Y. 2007). In *Gabra*, the plaintiff was injured in a corridor designed "to limit access to arriving passengers and airline personnel" and to "keep its arriving international passengers segregated from other newly arrived passengers, as well as the general public." *Gabra*, 2000 U.S. Dist. LEXIS 14395, at *8. This segregation played a significant role in the Southern District of New York's determination that plaintiff was in the process of disembarking when he suffered his injuries. *Id.*

In the instant case, when Plaintiff and her fellow passengers arrived at Miami International Airport, they were segregated from the other arriving passengers by closed glass doors; restricting their access to the public until they cleared immigration and customs. *See* Statement of Undisputed Material Facts. In light of the foregoing, it is clear Plaintiff was still in the process of disembarking from an international flight when the incident occurred. As such, her claims are exclusively governed by the Montreal Convention.

### 2. The Montreal Convention Preempts State Law Claims

Because the Montreal Convention entered into force on November 4, 2003, there is a limited amount of authority on its interpretation. *Knowlton v. American Airlines*, 2007 U.S. Dist. LEXIS 6882 (D. Md. Jan. 31, 2007). Since the inception of the Montreal Convention, courts

have found it to be the exclusive remedy for claims regarding the rights and liabilities of passengers and carriers in international air transportation. *Onwuteaka v. Northwest Airlines, Inc.*, 2007 U.S. Dist. LEXIS 34273 (S.D. Tex. 2007)(citing *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S.155, 161 (1999)). Although the Montreal Convention completely replaced the prior Warsaw Convention, courts interpreting the Montreal Convention rely on cases interpreting similar provisions of the Warsaw Convention. *Baah v. Virgin Atlantic Airways, Ltd.*, 473 F. Supp. 2d 591 (S.D.N.Y. 2007); *Paradis v. Ghana Airways Ltd.*, 348 F. Supp. 2d 106 (S.D.N.Y. 2004).

In *Paradis*, the Court held that the plaintiff's breach of contract claim was preempted by both the Montreal and Warsaw Conventions because the treaties preempt all state law claims within their scope. *Id.* The Court found the preemptive effect of the Montreal and Warsaw Conventions to be identical. *Id.* The Court looked to both Conventions' provisions with preemptive effect to determine which Convention governed the matter before them. *Id.* Article 24(1) of the Warsaw Convention states that "in the carriage of passengers and baggage, any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention." *Id.* The Montreal Convention offers Article 29 with similar language stating: "In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention…" *Id.* The Court found that the language in the Montreal Convention simply clarified the language of the Warsaw Convention, thus there was no need to decide which Convention controlled the issue of preemption as the language was the same in both. *Id.*

Similarly, in *Knowlton*, the court held in favor of the cases upholding complete preemption, finding that the treaties were designed to create a uniform system of liability among

7

airlines for claims arising from international flights. *Knowlton v. American Airlines*, 2007 U.S. Dist. LEXIS 6882 (2007) (citing *El Al Israel Airlines v. Tseng*, 525 U.S. 155 (1999)). Furthermore, courts routinely reject arguments that cases decided under the Warsaw Convention are inapplicable to cases involving the Montreal Convention. *Onwuteaka v. Northwest Airlines, Inc.*, 2007 U.S. Dist. LEXIS 34273 (S.D. Tex. 2007); *see also Igwe v. Northwest Airlines, Inc.*, 2007 U.S. Dist. LEXIS 1204 (S.D. Tex. 2007) (finding that unless it is noted otherwise, the court assumes that the case law interpreting the Warsaw Convention, as amended by the Montreal Protocol No. 4, has equal applicability to the interpretation of the Montreal Convention for purposes of preemption).

The Conventions preempt all state law claims within their scope. *Paradis v Ghana Airways Ltd.*, 348 F. Supp. 2d 106 (S.D.N.Y. 2004); see also, *Shah v. Pan Am World Servs., Inc.*, 148 F.3d 84, 97-98 (2d Cir. 1998); *Fishman v. Delta Air Lines, Inc.*, 132 F.3d 138, 141 (2d Cir. 1998); *El Al Airlines, Ltd. v. Tseng*, 525 U.S. 155, 161 (1999) (holding that the Warsaw Convention preempts a state law claim against an airline for injury even though the circumstances did not satisfy the Convention's conditions for imposing liability). In accord with the Warsaw and Montreal protocols, "a passenger whose injury is not compensable under the Convention because it . . . was not the result of an 'accident' will have no recourse to an alternate remedy." *Id*. Further, "recovery for a personal injury suffered 'on board [an] aircraft or in the course of any of the operations of embarking or disembarking,' . . . if not allowed under the Convention, is not available at all." *Id*. A Plaintiff cannot "circumvent [the Warsaw Convention] merely by re-characterizing her claims as sounding in state law." *Paradis, v, Ghana Airways Ltd.*, 348 F. Supp. 2d 106 (S.D.N.Y. 2004) (citing *Fields v. BWIA Int'l Airways*, No. 9 Civ. 2493, 2000 U.S. Dist. LEXIS 9397, at *13 (E.D.N.Y. 2000)).

      3.      Plaintiff's Alleged Injuries Did Not Arise Out Of An "Accident" As Defined By The Montreal Convention; Accordingly Plaintiff's Claims Are Preempted And Barred.

Plaintiff's fall on the escalator does not qualify as an "accident" as defined by the Montreal Convention; therefore, Plaintiff's claims are preempted and barred. The intent of the Warsaw Convention is to create incentives for safe and economic travel, "not to make carriers insurers of their passengers' well-being." *Margrave v. British Airways*, 643 F. Supp. 510, 515 (S.D.N.Y. 1986) (citing *Saks v. Air France*, 724 F.2d 1383, 1389-90 (9th Cir. 1984). "Liability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405 (1985).

In order to prove an "accident" occurred, a passenger must be able to prove that a link in the chain of causation was unusual or unexpected. *Id.* at 406. *See also, Cush v. BWIA Int'l Airways, Ltd*, 175 F. Supp. 2d 483, 487 (E.D.N.Y. 2001). This link must be attributable to the cause of the accident and not merely to the occurrence itself. *Id.* at 399. Courts apply a proximate cause analysis in determining whether an unusual event is a link in the chain which led to an accident as defined by the Convention. *Cush*, 175 F. Supp. 2d 483, 487 (E.D.N.Y. 2001). This proximate cause analysis requires Plaintiff to demonstrate an uninterrupted connection between the event and the injury. *Id.*

Further, an "accident" reaches only those injurious happenings that result from risks that are "characteristic of air travel" meaning they have some relationship to the operation of the airplane. *Maxwell v. Aer Lingus Ltd.*, 122 F. Supp. 2d 210, 212 (D. Mass. 2000). The *Maxwell* court explained that in "cases in which the accident has no relationship to the operation of the aircraft . . . liability is almost never found." *Id.* at 212-13, n.6 (*citing Curley v. American*

9

*Airlines, Inc.*, 846 F. Supp. 280 (S.D.N.Y. 1994)). *See also Gotz v. Delta Airlines, Inc.*, 12 F. Supp. 2d 199, 202 (D. Mass. 1998)(finding that there was no "accident" when the plaintiff's injuries arose from another passenger raising his arm during the boarding process causing the plaintiff to move away and tear his rotator cuff); *Garcia Ramos v. Transmeridian Airlines, Inc.*, 385 F. Supp. 2d 137, 142 (D.P.R. 2005)(holding that the plaintiff's injury arising out of a passenger stepping over her had "no relation to the operation of the aircraft" and was not an "accident" under the Warsaw Convention).

In the instant matter, Plaintiff's incident was not the result of an "accident." First, Plaintiff has not demonstrated how voluntarily climbing up a stopped escalator qualifies as an unusual or unexpected event or happening. Escalators are commonplace throughout malls, airports, department stores, etc. It follows, then, that stopped escalators are almost as commonplace. While coming upon a stopped escalator could be qualified as an inconvenient event or happening, it is neither unusual nor unexpected. As escalators are found in everyday life, all over the world, injurious happenings resulting from the use of those escalators can hardly be characterized as a risk "characteristic of air travel." This lack of relationship to air travel acts to further exclude Plaintiff's incident from "accident" status under the Montreal Convention.

Secondly, Plaintiff's choice to climb the escalator was an internal response to the situation presented by the stopped escalator, rather than a happening external to the passenger, which is a clear prerequisite under Article 17. *See Zarlin v. Air France.*, 2007 U.S. Dist. LEXIS 66288 (S.D.N.Y. 2007). In *Zarlin*, a case arising under the Warsaw Convention, a passenger was injured by the reclining of the seat in front of her. *Id*. at * 3. She was subsequently moved to a different seat on the airplane but later returned to her original seat "of her own volition." *Id.* The Court found no "accident" to have occurred, as the passenger's own choice to return to her

seat was the cause of her injuries. *Id.* at * 14. *See also Cush v. BWIA Int'l Airways, Ltd*, 175 F. Supp. 2d 483, 487-88 (E.D.N.Y. 2001) (finding no accident where plaintiff's own choice not to leave the airplane when asked to do so caused his injuries); *Schaeffer v. Cavallero*, 54 F. Supp. 2d 350, 352 (S.D.N.Y. 1999)("[E]ven assuming, arguendo, that [Trans World Airlines'] decision to ask plaintiff to leave [an aircraft] was wrongful, there was nothing to prevent plaintiff, once apprised that he would be forced to leave, from leaving on his own.")[1]

Similarly, in the instant matter, there was no external happening which caused the incident and Plaintiff's alleged injuries. Instead, it was her own internal reaction to the stopped escalator which caused them. Nothing about Plaintiff's circumstances required her to step on to the escalator. *See Zarlin v. Air France*, 2007 U.S. Dist. LEXIS 66288 (S.D.N.Y. 2007) (finding that Plaintiff's own choice was the proximate cause of her injuries when she chose to return to a row of seats behind a person who reclined seat and injured her). Plaintiff could have chosen to take the stairs or the elevator, both of which were located in the immediate vicinity of the subject escalator. *See* Statement of Undisputed Facts. *See also* Photographs of the Area at Docket No. 56-1. She chose, instead, to take the escalator she now claims caused her injuries. Likewise, once Plaintiff noticed the escalator was not moving, there was nothing to prevent her from either seeking out a different mode of transportation to customs, or from asking for assistance.

Reminiscent of the passenger in *Zarlin*, Plaintiff's decision to climb the stopped escalator was the sole cause of the incident and her alleged damages. Plaintiff testified that although she was dragging a heavy piece of luggage and noticed the escalator was not moving, she stepped on to it anyway. *See* Statement of Undisputed Facts. While turning to lift her bag by the handle,

---

[1] Despite the fact that *Schaeffer v. Cavallero*, 54 F. Supp. 2d 350 (S.D.N.Y.) was not brought pursuant to the Warsaw Convention, the causation analysis which acknowledged the proximate cause of Plaintiff's injuries as being the refusal to disembark, was identical to Article 17 analysis under the Warsaw Convention. *Cush*, 175 F. Supp. 2d 483 at FN1.

11

CASE NO. 07-23205-CIV-MORENO

Plaintiff became injured. *Id.* Consequently, Plaintiff's choice to traverse the inoperable escalator and to lift her bag up the escalator was the sole and proximate cause of her damages. *Id.*

The chain of causation was broken by Plaintiff's affirmative choice to carry her bag up the escalator and Plaintiff has failed to demonstrate a genuine issue of proximate cause. Where, as here, the non-moving party fails to make a "sufficient showing" that there was a genuine issue of proximate cause, Summary Judgment is appropriate. *Margrave v. British Airways*, 643 F. Supp. 510, 513 (S.D.N.Y. 1986) (finding Summary Judgment appropriate under Warsaw Convention where party fails to make sufficient showing of proximate cause). For the aforementioned reasons, Plaintiff's injuries did not arise out of an "accident" as defined by the Montreal Convention, and her claims are, therefore, barred and preempted.

    4.    <u>Alternatively, Plaintiff's Damages Are Limited to 100,000 Special Drawing Rights As Plaintiff's Damages Were Not Due To The Negligence Or Other Wrongful Act Or Omission Of American Airlines</u>

Plaintiff's damages were not due to the negligence or other wrongful act or omission of American Airlines. Article 21 of the Montreal Convention provides that a carrier shall not be liable for provable damages exceeding 100,000 Special Drawing Rights where Plaintiff's damages are not due to Defendant's negligence or other wrongful act or omission.

Here, there has been no evidence presented by Plaintiff to show American Airlines engaged in any negligent behavior that caused the subject escalator to come to a halt; there has only been Plaintiff's speculation that the escalator was negligently maintained. *See* Amended Complaint, Docket No. 16. However, the mere fact that an escalator is stopped is not proof of negligence. Escalators can stop for a myriad of reasons. Miami-Dade County's witnesses admit the existence of an emergency stop button, which could have been pressed by any number of people before Plaintiff stepped on to the escalator. *See* Statement of Undisputed Facts. There

has been no evidence put forth to show either negligent maintenance on the part of American Airlines, or any defect in the escalator itself. Furthermore, even in the event a defect did exist, there is no record proof or any evidence whatsoever from which a jury could draw a permissible inference that American Airlines knew or should have known about it. Moreover, there is no evidence that American Airlines, as opposed to some other non-party to this action created the dangerous condition of which Plaintiff complains. *See* Statement of Undisputed Facts.

Plaintiff's Amended Complaint also claims that American Airlines failed to provide a reasonable mode of operation. Docket No. 16. Yet, Plaintiff has no record evidence in support of this allegation. In reality, testimony and photographs of the subject location clearly demonstrate that Plaintiff had a choice. *See* Statement of Undisputed Facts. Plaintiff could have taken the subject escalator, an elevator or a stairway. *Id.* As Plaintiff had the ability to utilize three separate modes of operation, Plaintiff is unable to prove American Airlines failed to provide a reasonable mode of operation.

Plaintiff's Amended Complaint also claims American Airlines was negligent in training and/or supervising its employees. American Airlines has a set training protocol for its gate agents. *See* Statement of Undisputed Facts. As Plaintiff has no evidence to demonstrate deficiencies in this protocol, Plaintiff has no record evidence to demonstrate negligent training and/or supervision of Defendant's employees.

There is no evidence here that Plaintiff's damages were caused by American Airlines' negligence, and her provable damages are therefore limited to up to 100,000 Special Drawing Rights.

    **B.** **Even If Plaintiff's Claims Were Not Preempted And Barred By The Montreal Convention, Summary Judgment Should Be Entered For American Airlines Because There is No Evidence to Support Plaintiff's Theory of Negligence.**

CASE NO. 07-23205-CIV-MORENO

In order to succeed on a claim of negligence, the Plaintiff must show that American Airlines failed to maintain the property in a safe condition or failed to warn the Plaintiff of a concealed peril. *See Cooper Hotel Services, Inc. v. MacFarland*, 662 So. 2d 710, 712 (Fla. 2d DCA 1995). The Plaintiff must also show that American Airlines had actual or constructive knowledge of the condition alleged to have been dangerous. *See Lester's Diner II, Inc. v. Gilliam*, 788 So. 2d 283, 285 (Fla. 4th DCA 2000).

When there is no evidence to charge a defendant with actual or constructive notice, judgment in favor of the defendant is appropriate. *See Frost v. Quatraine Condominium I Assoc., Inc.*, 569 So. 2d 476, 476 (Fla. 3d DCA 1990). In this case, there is neither proof of a defect, nor American Airlines' knowledge of it. The only evidence put forth is that the subject escalator was stopped by the time Plaintiff approached it. Miami-Dade County's witnesses have admitted there is an emergency stop button on the escalator which could have been pressed by any number of people during the disembarking process. *See* Statement of Undisputed Facts. In this case, the sum and substance of Plaintiff's case is that the escalator was stopped when she approached it. Plaintiff lacks any evidence showing negligent maintenance on the part of American Airlines, or any defect in the escalator itself as alleged in her Amended Complaint. Furthermore, even in the event a defect did exist, there is no record proof from which a jury could possibly draw a permissible inference that American Airlines knew or should have known about it.

To that end, a defendant does not owe a duty to warn of a peril about which the defendant did not know and which the plaintiff could have discovered by exercising reasonable care. *See Cooper Hotel Services, Inc. v. MacFarland*, 662 So. 2d 710, 712 (Fla. 2nd DCA 1995). It is common sense that dragging a heavy piece of luggage up a stopped escalator could cause someone to fall. The Plaintiff admitted in her deposition that she realized the escalator was

stopped before she stepped on to it. *See* Statement of Undisputed Facts. Plaintiff admits also that she would not have attempted to carry the bag up a normal flight of stairs. *Id.* This testimony begs the question; why, then, did she decide to carry her bag up a stopped escalator?

At the point she realized the escalator was stopped, Plaintiff should have exercised reasonable care to avoid a fall; either by utilizing an alternate mode of transport, i.e. the elevator; or by alerting American Airlines personnel. American Airlines personnel, County personnel and photographs of the area demonstrated the close proximity between the stairway, elevator and escalator. *See* Statement of Undisputed Facts. The mere fact Plaintiff did not utilize an alternate mode of transportation and subsequently fell, does not mean a breach of a duty occurred. *See Cooper Hotel Services,* 662 So. 2d at 713 (holding there was no breach when plaintiff fell because she failed to exercise caution where water in a bathtub created a slippery condition, noting it was "common sense" that water in a bathtub creates a slippery condition.).

Plaintiff has also failed to put forth any evidence whatsoever tending to prove American Airlines' actions or inactions were the proximate cause of her damages. Simply because the Plaintiff may have sustained injuries while walking up a stopped escalator does not, of itself, prove negligence on American Airlines' part. The Florida First District Court of Appeals found a stopped escalator to be insufficient evidence of negligence, absent any evidence of negligent maintenance. *Otis Elevator Co. v. Chambliss*, 511 So. 2d 412, 412 (Fla. 1st DCA 1987). There, plaintiff fell on an escalator and sustained injuries when the escalator *suddenly stopped*. *Id.* However, the stopped escalator plus her injuries were not enough to support a claim of negligence. *Id. See also Cooper Hotel Services, Inc. v. MacFarland*, 662 So. 2d 710, 712 (Fla. 2nd DCA 1995)(stating "[n]egligence [however] may not be inferred from the mere happening of an accident alone."); *Burns v. Otis Elevator Co.,* 550 So. 2d 21 (Fla. 3d DCA 1989) (noting

CASE NO. 07-23205-CIV-MORENO

that plaintiff/passenger must present sufficient evidence, beyond that of the accident alone, from which a jury may infer that the defendants' breach of care caused the injury).

Florida courts have historically followed the "but for" causation-in-fact test, that is "to constitute proximate cause there must be such a natural, direct, and continuous sequence between the negligence [sic] act [or omission] and the [plaintiff's] injury that it can reasonably be said that but for the [negligent] act [or omission] the injury would not have occurred.'" *Stahl v. Metro. Dade County*, 438 So. 2d 14, 17 (Fla. 3d DCA 1983) (quoting *Pope v. Pinkerton-Hays Lumber Co.*, 120 So. 2d 227, 230 (Fla. 1st DCA 1960) (emphasis in original)). Here, it can not be said that but for the escalator being stopped, Plaintiff would not have sustained injuries. Plaintiff sustained injuries because she chose to drag a heavy bag up that escalator, rather than seeking a reasonable alternative means of transportation. Plaintiff's own choices were the proximate cause of her injuries. There is simply no evidence tending to prove otherwise. Plaintiff has failed to present any evidence to prove her theory of negligence, and therefore, summary judgment should be granted in American Airlines' favor.

## IV.    CONCLUSION

Summary Judgment is appropriate because the Montreal Convention preempts and bars Plaintiff's claims as her injuries did not arise out of an "accident" as defined by the Convention. Alternatively, if this Court finds that Plaintiff's claims are not barred under the Montreal Convention, Plaintiff's damages were not caused by American Airlines' negligence, and Plaintiff's provable damages are therefore limited to up to 100,000 Special Drawing Rights. Finally, even if this Court finds that the Montreal Convention does not preempt Plaintiff's claims, Summary Judgment in favor of American Airlines would be appropriate, as Plaintiff has presented no evidence to support a claim of negligence against American Airlines.

CASE NO. 07-23205-CIV-MORENO

WHEREFORE Defendant, American Airlines, Inc. hereby requests an Order granting summary judgment on Plaintiff's claims against American Airlines and for all other relief this Court finds just and proper.

Respectfully submitted,

s/ Shannon Campbell Fitzpatrick
GREGORY M. PALMER
Florida Bar No. 784796
SHANNON CAMPBELL FITZPATRICK
Florida Bar No. 499382
RUMBERGER, KIRK & CALDWELL
80 S.W. 8th Street, Suite 3000
Miami, Florida  33130
Telephone:  (305) 358-5577
Telecopier:  (305) 371-7580
***Attorneys for Defendant***

CASE NO. 07-23205-CIV-MORENO

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of June, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on this day via transmissions of Notices of Electronic Filing generated by CM/ECF on Ronald M. Simon, Esq., Simon & Bocksch, *attorneys for Plaintiff*,  Brickell Bay Office Tower, 1001 Brickell Bay Drive, Suite 1200,  Miami, Florida  33131; John W. Gautier, Gautier & Hasty, P.L., *co-counsel for Plaintiff*, 370 Minorca Avenue, Suite 21, Coral Gables, Florida  33134; and to:  Gregory P. Sreenan, Esq., Eduardo Gomez, Esq., Sreenan & Associates, P.A., *attorneys for Miami-Dade County d/b/a Miami International Airport*, 44 W. Flagler Street, Suite 1720, Miami, Florida 33130.

    s/ Shannon Campbell Fitzpatrick
GREGORY M. PALMER
Florida Bar No. 784796
SHANNON CAMPBELL FITZPATRICK
Florida Bar No. 499382
RUMBERGER, KIRK & CALDWELL
80 S.W. 8th Street, Suite 3000
Miami, Florida  33130
Telephone:  (305) 358-5577
Telecopier:  (305) 371-7580
***Attorneys for Defendant***

681225